1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HANEET KUMAR, et al.,

        Plaintiffs,

    v.

WILLIAMS PORTFOLIO 7, INC.,

        Defendant.

CASE NO. C14-657RAJ

ORDER

## I.  INTRODUCTION

Now before the Court are numerous motions *in limine* filed by Plaintiffs Haneet and Neerupma Kuma and their minor son (collectively, "Plaintiffs") and Defendant Williams Portfolio 7, Inc.  As set forth below, the Court **DENIES** Plaintiffs' motions, **GRANTS** Defendant's motions numbered 4, 12, 14, 15, 17, 18, 19, and 20 as **stipulated**, **GRANTS in part and DENIES in part** Defendant's motions numbered 1 and 5, **DENIES** Defendants' motions numbered 2, 3, 7, 8, 13, and 16, and **GRANTS** Defendants' motions numbered 6, 9, 10, and 11.

## II.  BACKGROUND

Plaintiffs have sued the owners of the Bellevue apartment complex in which they lived from May 2011 to either March or May 2012.  They claim violations of the Washington Residential Landlord Tenant Act, breach of their lease with Williams and of the lease's implied warranty of habitability, and negligence.  *See* Dkt. # 1 (Compl.) ¶¶4.1-

ORDER – 1

4.23.  The focus of these claims is the Plaintiffs' assertion that there was mold in their apartment unit and that the mold has caused them adverse health impacts.

On May 25, 2015, the Court granted in part Defendant's motion to exclude expert testimony from Plaintiffs' expert, Dr. Scott McMahon, M.D.  *See* Dkt. # 28.  The Court prohibited Dr. McMahon from testifying as to any evidence he would be required to disclose in a written report pursuant to Fed. R. Civ. P. 26(A)(2)(B) as he was found to be testifying in his capacity as a treating physician.  *Id.* at p. 2.

On July 23, 2015, the Court denied Defendant's motion for partial summary judgment.  *See* Dkt. # 41 at 11.  However, the Court did so while placing limitations on the Plaintiffs' testimony.  *Id.*  These limitations include prohibiting Plaintiffs from presenting certain evidence unless they provided Defendant certain foundational evidence, including the method for determining an EMLab "MoldSCORE" and a specific list of opinions Dr. McMahon formed in the course of treating the Plaintiffs.  *Id.* at pp. 5 & 11.

### III.  ANALYSIS

#### A.  **Stipulated Motions *in Limine***

The Parties appear to have stipulated to several of Defendant's proposed motions *in limine*.  Given the Parties' agreement, the Court **GRANTS** these motions as follows:

- Defendant's motion *in limine* #4 to exclude testimony from Dr. Mary Anne Block is **GRANTED** so long as Plaintiffs do not show that Dr. Block will be available to attend and testify at trial;

- Defendant's motion *in limine* #12 is **GRANTED**.  Plaintiffs may not offer any testimony or evidence regarding MoldScore and Plaintiffs' Proposed Exhibit 25 shall be redacted to exclude any reference to MoldScore;

- Defendant's motion *in limine* #14 is **GRANTED**.  Plaintiffs may not offer any evidence of settlement discussions or of Defendant's liability insurance;

ORDER – 2

- Defendant's motion *in limine* #15 is **GRANTED**. Plaintiffs may not offer any evidence regarding the financial status or size of Defendant;

- Defendant's motion *in limine* #17 is **GRANTED**. Plaintiffs may not offer any argument that jurors should put themselves in Plaintiffs' position;

- Defendant's motion *in limine* #18 is **GRANTED**. Plaintiffs may not make any reference at trial to the expense of litigation;

- Defendant's motion *in limine* #19 is **GRANTED**. The Parties are to give the other party a minimum 24-hour notice of which witnesses will actually testify on each day of trial; and

- Defendant's motion *in limine* #20 is **GRANTED**. Non-party lay witnesses are excluded from the courtroom during trial when they are not testifying.

**B.**     **Plaintiffs' Motions *in Limine***

**1.**     **Plaintiffs' Motion *in Limine* #1 to Exclude Defendant's Experts**

The primary basis for Plaintiffs' motion to exclude Defendant's experts is that Plaintiffs' experts rely upon a 2006 position statement by the American Academy of Allergy, Asthma, and Immunology ("AAAAI"), which in turn relied upon a 2002 American College of Occupational and Environmental Medicine ("ACOEM") position statement which was subsequently updated in 2011 and allegedly removed from ACOEM's website earlier this year. *See* Dkt. # 42 at p. 2.

Defendant responds that Plaintiffs' argument is irrelevant. *See* Dkt. # 46 at p. 1. Defendant explains that two of its experts do not even cite to the allegedly withdrawn position statement and the sole expert that does cite to it does so amongst numerous other sources. *Id*.

The Court **DENIES** Plaintiffs' motion.

As an initial matter, simply because ACOEM removed a position statement from its website does not mean that it has withdrawn the paper – and Plaintiffs have presented no evidence to the contrary. Plaintiffs may be correct in saying that Defendant's experts

ORDER – 3

"are not employees, representatives or agents of AAAAI or ACOEM and have no authority to speak on behalf of those organizations," but neither, of course, are Plaintiffs.[1] Dkt. # 42 at 3.

In any event, it is unclear how the alleged withdrawal of ACOEM's 2011 position statement would undermine the reliability of Defendant's experts' testimony. For one, Defendant's experts do not only rely upon the challenged position statement. Drs. Kelman and Altman cite to AAAAI's 2006 position statement (*see* Dkt. # 30 ¶ 9; Dkt. # 31 ¶¶ 6, 9), which in turn cites ACOEM's 2002 position statement amongst 44 other sources (*see* Dkt. # 31 Ex. B at p. 332-333). Ms. Robbins, on the other hand, cites to the ACOEM's 2011 position statement amongst at least two other sources for the same proposition. *See* Dkt. # 32 ¶ 5F n.10.

Moreover, even assuming ACOEM's 2002 and 2011 position statements were no longer valid – a fact which Plaintiffs have not shown – that invalidity would not undermine the reliability of Defendant's expert's methodologies as they rely extensively on other sources. *See* Dkt. ## 30, 31, 32; *see also* Dkt. # 47 Ex. A ¶ 7, Ex. B ¶ 3, 6; *cf. Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 844 (9th Cir. 2001) (citation of questionable scientific literature not necessarily grounds for exclusion of expert evidence). As Defendant rightfully notes, Plaintiffs have not shown that the *underlying scientific principle* its experts rely upon is invalid. As such, Plaintiffs' challenge to Defendant's experts' methodologies is without merit.

Plaintiffs also challenge the methodology of Dr. Altman as not being based on physical examination of the Plaintiffs and for failing to offer any opinion regarding their current treatment or condition. *See* Dkt. # 42 at p. 5.

---

[1] Defendant's expert, Dr. Bruce J. Kelman, in fact *is* a member of ACOEM and familiar with the organization's policies and procedures. *See* Dkt. # 47, Ex. A ¶ 8. As he explains, ACOEM did not retract the position statements but simply allowed them to lapse. *Id.* ¶ 9; *see also id.* Ex. B ¶ 7.

ORDER – 4

Plaintiffs' challenge is not well-taken and is **DENIED**. A physician may render an expert opinion on a plaintiff's condition even if he does "not personally examine [plaintiff]." *Sementelli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998). This is because "Federal Rule of Evidence 703 allows an expert to base his or her opinions and inferences on facts and/or data 'perceived by or made known to the expert at or before the hearing.'" *Id.* (quoting Fed. R. Evid. 703). Here, Dr. Altman relied, *inter alia*, upon Plaintiffs' medical records and other case related materials. *See* Dkt. # 30 ¶ 3. Such materials are a proper basis for Dr. Altman's testimony.

Furthermore, to the extent that Plaintiffs contend that Dr. Altman's opinions are unreliable because he did not rely upon Plaintiffs' more current medical records with their expert Dr. McMahon, that argument is belied by the fact that Dr. McMahon was not disclosed until April 3, 2015 (*see* Dkt. # 28 at p. 1) – less than two weeks prior to the discovery cutoff (Dkt. # 15) – so Defendant could not even reasonably obtain those records in time to prepare expert rebuttal evidence. In fact, Plaintiffs did not provide such records until June 24, 2015 – nearly two months after the discovery cutoff and well after the period Defendant could conduct discovery. Dkt. # 47 ¶ 6.

### 2. Plaintiffs' Motion *in Limine* #2 to Exclude Evidence of Foothill Apartments Mold

Plaintiffs next seek to preclude Defendant from introducing two air quality reports for the Foothill Commons apartment complex[2] (*see* Dkt. # 42 at p. 6) where they moved after leaving the Carrington (*see* Dkt. # 35, Ex. 5 [Haneet Kumar Depo. Tr.] at 18:15-18).[3]

---

[2] More specifically, Plaintiffs challenge a September 6, 2013 "Odin Enterprise Indoor Air Quality (IAQ) Assessment Report" and an August 31, 2013 "Spore Trap Analysis Report prepared by Fallah Microanalytical Laboratory, LLC dba IDEHL." Dkt. # 42 at p. 6.

[3] Plaintiffs also seek to exclude photographs Plaintiff Haneet Kumar took of the Foothill Commons basement on the grounds that he is "not qualified to testify as to the condition of the basement." *See* Dkt. # 42 at p. 7. It is not entirely clear what Plaintiffs' argument is on this point. As Plaintiffs acknowledge that Plaintiff Haneet Kumar took these pictures and produced them during discovery, it is unlikely that they could levy any challenge to the pictures'

ORDER – 5

Defendant argues – and Plaintiffs appear to acknowledge – that the two challenged reports were commissioned by Plaintiffs. *See* Dkt. # 46 at p. 8; Dkt. # 42 at p. 6 ("The Kumar family later had the quality of the Foothill apartment tested"); *see also* Dkt. # 47 Ex. E [Haneet Kumar Depo. Tr.] at 27:19-21, 28:9-14. Statements made by a party's employees or agent within the scope of that relationship while it existed are not hearsay. *See* Fed. R. Evid. 801(d)(2)(D). And statements made by independent contractors likewise may qualify as such statements of party opponent. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 973-74 (C.D. Cal. 2006) (holding that statements made by a party's independent contractor were admissible non-hearsay). Here, as best as the Court can tell, Plaintiffs commissioned these independent contractors precisely for the statements contained in the reports – whether mold was or was not present in the air of the Foothill Commons apartment complex.

Plaintiffs also argue that Defendant cannot introduce this evidence without expert testimony. Dkt. # 42 at p. 7. Plaintiffs may not seriously contest the authenticity of this evidence, as documents produced by a party in discovery may be deemed authentic when offered by a party opponent. *See Orr.*, 285 F.3d at 777 n.20. To the extent that Plaintiffs challenge the methodology and reliability of these reports, they have not provided any evidence for the Court to make such a determination. In any event, even a cursory review of the reports reveals that there is little to distinguish the methodology employed by Odin Enterprise and IDEHL from the methods used by 911 Restoration and EMLab. *Compare* Dkt. # 33-5 at pp. 17-31 *with* Dkt. # 38 Ex. 1 at pp. 5-12. And given this Court's previous finding that there was no basis to exclude the EMLab results as unreliable (*see*

---

authenticity. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 777 n.20 (9th Cir. 2002) (citing *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n.12 (9th Cir. 1996)). And the presence of mold in the Foothill Commons apartment complex's basement may be probative of a material fact – showing that Plaintiffs' were exposed to mold in the Foothill Commons complex rather than in the Carrington – and is therefore relevant and admissible. *See* Fed. R. Evid. 401 & 402.

Dkt. # 41 at p. 5), it similarly finds that there is little reason to do so now for the Odin Enterprise and IDEHL reports.

Finally, Plaintiffs summarily argue that admitting these reports will unfairly prejudice them.  Dkt. # 42 at p. 7.  "'Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403.'"  *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983)).  Plaintiffs do not explain *how* this evidence will cause such unfair prejudice as to substantially outweigh its probative value.  Accordingly, the Court **DENIES** Plaintiffs' request.

### 3.    Plaintiffs' Motion *in Limine* #3 to Exclude Henry Bartels

Plaintiffs next seek to exclude testimony from Defendant's witness, Henry Bartels, on the grounds that Defendant did not identify him in its initial disclosures or in responses to Plaintiffs' interrogatories.  *See* Dkt. # 42 at p. 8.  Defendant responds that it intends to call Mr. Bartels not in support of any of its claims or defenses, but only as a rebuttal witness in the event that Plaintiffs are permitted to present testimony regarding roof repairs made by Axis Roofing in 2015.  Dkt. # 46 at p. 11.

Ordinarily, the Federal Rules of Civil Procedure require parties to disclose the names of any individual likely to have discoverable information.  *See* Fed. R. Civ. P. 26(a)(1)(A)(i).  However, this rule is relaxed when an individual is not being used to support the disclosing party's claims or defenses or whose use would solely be for impeachment.  *See id.*  Given Defendant's representations, Mr. Bartels would likely only be used for the purpose of impeaching any testimony regarding certain roof repairs in 2015.  As such, Defendant did not need to disclose his name in its disclosures.  The Court **DENIES** Plaintiffs' motion.  In so ruling, the Court emphasizes that it will hold Defendant to its representations that Mr. Bartels will not be used for any purpose other than for impeachment.

ORDER – 7

### 4. Plaintiffs' Motion *in Limine* #4 for Sanctions for Spoliation

Finally, Plaintiffs move the Court to impose sanctions in the form of judgment in their favor for alleged spoliation of evidence connected to roof repairs conducted in 2015. *See* Dkt. # 42 at pp. 8-14.

This Court has already addressed issues pertaining to this roof repair in its order denying Plaintiffs' motion to continue case deadlines. *See* Dkt. # 28 at pp. 3-4. And the only "new" evidence Plaintiffs present is deposition testimony from Casey Groves. *See* Dkt. # 43-1, Ex. 3. But Plaintiffs presented testimony from Mr. Groves by way of attorney declaration in their prior motion (*see* Dkt. # 24) and none of Mr. Groves' deposition testimony addresses the concerns the Court raised in its May 25, 2015 order (*see* Dkt. # 28 at p. 3). Simply put, Plaintiffs still have presented no evidence suggesting that the mold issues in the apartment was the result of water intrusion from a leaky roof or even that the building in which their apartment was located had a leaky roof. And, as the Court has previously stated, "there is no indication that the cause of the mold in Plaintiffs' apartment is a matter of particular importance in this case." Dkt. # 28 at p. 4. In fact, Plaintiffs' Complaint focuses entirely on the presence of mold in the Carrington and not on how the mold got there. *See* Dkt. # 1 (Compl.) ¶¶ 3.1-3.24.

"Spoliation of evidence is the 'failure to preserve property for another's use as evidence, in pending or future litigation.'" *Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 677 (W.D. Wash. 2014) (quoting *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009)). And spoliation sanctions cannot be imposed without a threshold showing of relevance. *See Akiona v. United States*, 938 F.2d 158,161 (9th Cir. 1991). Plaintiffs have not shown such relevance here. The Court **DENIES** Plaintiffs' request for sanctions for spoliation of evidence.

///

///

///

ORDER – 8

### C. **Defendant's Motions _in Limine_**

#### 1. **Defendant's Motion _in Limine_ #1 to Exclude Dr. Scott McMahon**

Defendant seeks to preclude Plaintiffs' expert Dr. McMahon from testifying on the grounds that Plaintiffs have failed to properly adhere to the Court's July 23, 2015 order requiring Plaintiffs to "identify a specific list of opinions that Dr. McMahon formed _in the course of treating the Kumars_." Dkt. # 44 at p. 3 (quoting Dkt. # 41 at p. 11). Plaintiffs provided Defendant with a list of Dr. McMahon's opinions on July 28, 2015. _See_ Dkt. # 44 (Krashan Decl.) Ex. E.

"[A] treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment." _Goodman v. Staples the Office Superstore, LLC_, 644 F.3d 817, 826 (9th Cir. 2011). Typically, this means that a treating physician may "generally testify as to the treatment that was provided to the plaintiff, [and] the diagnosis of the plaintiff's conditions and prognosis" but must supply an expert report if she intends to offer any testimony beyond these topics. _Sanchez v. California_, No. 1:12–cv–01835–SAB, 2015 WL 2185186, at *8 (C.D. Cal. May 8, 2015).

Plaintiffs' list identifies nine topic areas, some touching upon these permitted areas for treating physician testimony. _See_ Dkt. # 44 (Krashan Decl.) Ex. E (listing, _inter alia_, "Treatment recommendations," and "Likely diagnosis(es)" as specific opinions for testimony). To this end, Plaintiffs' appear to finally have brought their intended proffer of Dr. McMahon in line with the Federal Rules.

But what remains troubling is that nearly all of Dr. McMahon's stated opinions merely echo the opinions he rendered _prior to actually treating the Plaintiffs_. _Compare_ Dkt. # 16 Ex. B (Dr. McMahon's preliminary expert report rendered prior to treating the Plaintiffs) _with_ Dkt. # 44 (Krashan Decl.) Ex. E.

For example, Plaintiffs' list the following opinions of Dr. McMahon that overlap with his opinions developed prior to treatment:

ORDER – 9

•     The Carrington was a water damaged building ("WDB") (Dkt. # 16-4 at p. 7; Dkt. # 44 (Krashan Decl.) Ex. E at p. 2);

•     That chronic inflammatory response syndrome ("CIRS") was the most likely illness affecting the Plaintiffs (Dkt. # 16-4 at p. 8; Dkt. # 44 (Krashan Decl.) Ex. E at p. 2);

•     Recommended lab testing (Dkt. # 16-4 at p. 8; Dkt. # 44 (Krashan Decl.) Ex. E at p. 2);

•     That the probable cause of CIRS-WDB in Plaintiffs was the Carrington (see Dkt. # 16-4 at pp. 9-10; Dkt. # 44 (Krashan Decl.) Ex. E at p. 2).

Other topics on Plaintiffs' list, such as the "Pathophysiology of CIRS and the current state of the science" and "Genetics as they pertain to CIRS" (*see* Dkt. # 44 (Krashan Decl.) Ex. E at p. 2) merely identify topics beyond the scope of treatment which this Court has already ruled Dr. McMahon may not opine on (*see* Dkt. # 28 at p. 2; Dkt # 41 at pp. 10-11).

Furthermore, Plaintiffs' list includes Dr. McMahon's likely *future* opinions. *See* Dkt. # 44 (Krashan Decl.) Ex. E at pp. 2-3. It is self-evident that Dr. McMahon may not testify as to opinions he has not yet reached.

In short, Plaintiffs' list still sheds little light on what – if any – specific opinions Dr. McMahon formed solely in the course of treating Plaintiffs as opposed to his review of Plaintiffs' files (provided by Plaintiffs' counsel) prior to treatment. Indeed, in a similar situation, the Ninth Circuit has expressed doubts regarding the admissibility of portions of a treating physician's testimony. *See Goodman*, 644 F.3d at 826 ("to form their opinions, these doctors reviewed information provided by Goodman's attorney that they hadn't reviewed during the course of treatment"). Allowing Dr. McMahon to testify as to these topics would permit Plaintiffs to conduct an end-run around the Federal Rules and transform previously-held expert opinions into ones developed during the course of

treatment. The Court **GRANTS in part** Defendant's Motion and excludes these portions of Dr. McMahon's testimony.

Still, certain aspects of Dr. McMahon's testimony are genuinely novel and pertain to his current treatment of the Plaintiffs, including his two hour consultation with Plaintiffs, his treatment recommendations (however sparse his descriptions may be), the "[t]ime course, expectations of therapy, and expected prognosis," and his testimony on potential future treatment options. *See* Dkt. # 44 (Krashan Decl.) Ex. E. Plaintiffs appear to have complied with the Court's July 23, 2015 order for these topics and, accordingly, Defendant's motion is **DENIED in part.** For these limited topics, Dr. McMahon may offer testimony *only* as to his opinions actually developed during his treatment of Plaintiffs.

Defendant also argues that Dr. McMahon's testimony should be excluded at least as to the child Plaintiff because Plaintiffs' discovery responses do not indicate that Dr. McMahon actually treated the child Plaintiff. *See* Dkt. # 44 at p. 9. Plaintiffs insist that such documents were provided, albeit with the child Plaintiff's name redacted, though Plaintiffs have not provided these documents to the Court. *See* Dkt. # 49 at p. 6. The Court **defers ruling** on this motion at this time.

### 2. Defendant's Motion *in Limine* #2 & 3 to Exclude Certain Opinions of Drs. David Buscher and Alfred Johnson

Defendant moves to exclude portions of Plaintiffs' experts Drs. Buscher and Johnson's testimony largely on the same grounds. In particular, Defendant moves to exclude any testimony from Drs. Buscher and Johnson on the topics of general causation, on the reasonableness of medical treatment sought from other providers, and the reasonable cost of medical treatment provided by other providers. *See* Dkt. # 44 at pp. 9-14. Plaintiffs counter that Drs. Buscher and Johnson may provide causation testimony but offer no argument regarding Defendant's other objections. *See* Dkt. # 49 at pp. 6-8.

ORDER – 11

The crux of Defendant's argument is that Dr. Buscher and Johnson should not be permitted to offer general causation testimony because they reached conclusions about the ability of mold to produce adverse health effects prior to actually treating the Plaintiffs. *See* Dkt. # 44 at p. 11. "[A] treating physician may be allowed to opine even as to causation if the opinion was formed during the course of providing treatment, regardless of submission of an expert report." *Luttrell v. Novartis Pharmaceuticals Corp.*, 894 F. Supp. 2d 1324, 1332 (E.D. Wash. 2012) (citing *Goodman*, 644 F.3d at 825-26). In fact, the majority view is that expert reports are not required for treating physicians to express "'opinions as to causation, diagnosis, prognosis and extent of disability where they are based on the treatment.'" *Headley v. Ferro Corp.*, 630 F. Supp. 2d 1261, 1266 (W.D. Wash. 2008) (quoting *Sprague v. Liberty Mut. Ins. Co.*, 177 F.R.D. 81 (D.N.H. 1998)). Such is the case here. The Federal Rules of Evidence permit Drs. Buscher and Johnson to testify as to general causation at least as it pertains to their diagnosis and treatment of the Plaintiffs.

Defendant also argues that Dr. Johnson may not testify simply because Plaintiffs failed to include that Dr. Johnson would offer "causation opinions" in their expert disclosures, even while acknowledging that "these opinions were likely developed during the course of Plaintiffs' treatment." *See* Dkt. # 44 at p. 13 (citing Dkt. # 44 (Krashan Decl.) Ex. A). Defendant's view elevates form over substance. Defendant received Plaintiffs' expert disclosures over six months ago and two months prior to the close of discovery (*see* Dkt. # 44 (Krashan Decl.) Ex. A; Dkt. # 15) and Defendant has had an opportunity to take Dr. Johnson's deposition (Dkt. # 44 (Krashan Decl.) Ex. C). Moreover, as discussed, *supra*, treating physicians are routinely permitted to render opinions on causation so long as those opinions were formed during treatment. *See Headley*, 630 F. Supp. 2d at 1266.

For these reasons, the Court **DENIES** Defendant's motions to exclude Drs. Buscher and Johnson as to issues of causation.

ORDER – 12

Defendant also moves to limit Drs. Buscher and Johnson's testimony as to the reasonableness of medical treatment and costs by certain other providers. *See* Dkt. # 44 at pp. 11-12, 13-14. Plaintiffs do not offer any response.

There seems little reason to believe that Plaintiffs intend to offer such testimony, especially as there does not appear to be any foundation for such testimony. Dr. Buscher testified that he has not reviewed any of the Plaintiffs' medical records from other providers. *See* Dkt. # 44 (Krashan Decl.) Ex. B [David S. Buscher Depo. Tr.] 11:1-7. Likewise, Dr. Johnson had not reviewed Plaintiffs' medical records from these providers and he did not discuss Plaintiffs' condition with anyone else. *See* Dkt. # 44 (Krashan Decl.) Ex. C [Alfred R. Johnson Depo. Tr.] 9:17-23, 11:23-12:1.

Accordingly, the Court **DENIES** Defendant's motion as to testimony about the reasonableness of the Plaintiffs' medical treatment and costs by other providers without prejudice to raising it at trial.

### 3. Defendant's Motion *in Limine* #5 to Exclude Evidence From Plaintiffs' Treatment Providers of the Necessity of Plaintiffs' Future Medical Care or Costs

Defendant also moves to exclude any testimony from Plaintiffs' treating providers regarding the necessity of future medical care or the cost of treatment because Plaintiffs have not designated any expert to provide such testimony. Dkt. # 44 at p. 14. Plaintiffs suggest that they are still treating with Dr. McMahon and that he may offer testimony on whether future medical care is necessary. *See* Dkt. # 49 at pp. 8-9. Plaintiffs also note that they have remained in contact with Dr. Buscher and that each of their treating physicians will opine that their condition is permanent. *Id.*

To the extent that Plaintiffs' treating physician experts formed opinions regarding the necessity of Plaintiffs' future medical care in the course of treatment, that testimony is permitted. Thus, to the extent Defendant seeks to exclude such evidence, its motion is **DENIED**.

ORDER – 13

However, Plaintiffs provide no proffer on whether their experts will testify as to likely future costs.

Plaintiffs may recover for future medical expenses that are reasonably certain to be incurred, but must provide evidence about those costs. *See Chapple v. Ganger*, 851 F. Supp. 1481, 1489, 1492 (E.D. Wash. 1994). Nothing in Plaintiffs' expert disclosures (Dkt. # 44 (Krashan Decl.) Ex. A), their list of Dr. McMahon's likely opinions at trial (Dkt. # 44 (Krashan Decl.) Ex. E), or their Response (Dkt. # 49) suggest that Dr. McMahon will provide such testimony or explain how he could be qualified to render such an opinion as to the costs of their treatment (particularly within the narrow scope of his testimony). As such, to the extent that Plaintiffs intend to introduce evidence regarding their likely future medical costs through their treating physician experts, the Court **GRANTS** Defendant's motion.

### 4. Defendant's Motion *in Limine* #6 to Exclude Evidence of Testimony Regarding RealTime Laboratories ("RealTime") Mycotoxin Testing

Defendant seeks to exclude any testimony or evidence regarding a RealTime urine panel as unreliable under Federal Rule of Evidence 702. Dkt. # 44 at p. 15. Specifically, Defendant contends that this evidence is unreliable – or, more accurately, its reliability cannot be tested – because RealTime has refused to turn over any documents regarding the procedures it utilized in performing the tests.

Plaintiffs argue merely that Defendant never provided them with the name and contact information of a third party and, apparently, that Defendant should accordingly not be allowed to exclude the RealTime data. *See* Dkt. # 49 at pp. 9-10. Plaintiffs' objection seems particularly strange given that they acknowledge receipt of Defendant's subpoenas and could have personally contacted RealTime, a third party. *See id.* at p. 10.

The proponents of expert evidence must do more than provide an expert's "qualifications, their conclusions and their assurances of reliability." *Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1319 (9th Cir. 1995). They must at least "explain

ORDER – 14

the methodology the experts followed to reach their conclusions [or] point to any external source to validate that methodology." *Id.* Plaintiffs have failed to do so (and, apparently, sought to shift the burden onto Defendant). As such, the Court **GRANTS** Defendant's motion.

### 5. Defendant's Motion *in Limine* #7 to Exclude Testimony From Plaintiffs Regarding Medical Causation, Including Their Internet Research, Regarding Mold-Related Illnesses

Defendant moves to preclude Plaintiffs from testifying that their various ailments were caused by exposure to mold as speculative, lacking foundation, and improper expert testimony. *See* Dkt. # 44 at pp. 17-18. Plaintiffs counter with a convoluted argument that Defendant was obligated by law to provide its tenants with information about health hazards associated with indoor mold and failed to do so. *See* Dkt. # 49 at pp. 10-11.

Quite apart from the fact that Plaintiffs have never pleaded this specific claim (*see* Dkt. # 1 (Compl.) ¶¶ 4.7-4.12.), it is clear that Plaintiffs may not testify about any statements from the Internet or from any healthcare provider to show that indoor mold causes adverse health effects as those statements are hearsay not within any exception (*See* Fed. R. Evid. 801 & 802).

Nevertheless, it is premature at this juncture to preclude Plaintiffs from testifying at all regarding what they believe to be the cause of their injuries. For one, none of the cited testimony of Plaintiff Haneet Kumar directly attributes Plaintiffs' injuries to mold. *See* Dkt. # 44 (Krashan Decl.) Ex. N. Furthermore, whatever deficiencies in expert qualifications that Plaintiffs may have clearly may be addressed on cross-examination.

As such, the Court **DENIES** Defendant's motion without prejudice. Defendant may object to specific testimony at trial.

### 6. Defendant's Motion *in Limine* #8 to Exclude Evidence Regarding Plaintiffs' Future Wage Loss

Defendant seeks to preclude Plaintiffs from offering any evidence that Plaintiff Haneet Kumar is entitled to any amount of wage loss based on mold exposure. *See* Dkt.

ORDER – 15

# 44 at pp. 18-19. Plaintiff Haneet Kumar does not claim wage loss in this action. Dkt. # 49 at p. 11. And the only testimony Plaintiffs will offer on this point is Plaintiff Haneet Kumar's testimony "regarding the impact the illness has had on his job." Dkt. # 49 at p. 11. Given Plaintiffs' representations, the Court **DENIES** Defendant's motion without prejudice to raising specific objections at trial.

### 7. Defendant's Motion *in Limine* #9 to Exclude Evidence Regarding the Valuation of Property Damage From Plaintiffs

Defendant also moves to exclude any testimony regarding the valuation of property damage from Plaintiffs. Dkt. # 44 at pp. 19-20. Plaintiffs counter that they may offer such testimony because they have personal knowledge of these facts. Dkt. # 49 at pp. 11-12.

In general, parties are required to provide "a computation of each category of damages claimed by the disclosing party-who must also make available for inspection and copying . . . the documents or other evidentiary material . . . on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii). Defendant contends that Plaintiffs provided no specific responses to any discovery requests regarding alleged property damages. *See* Dkt. # 44 at p. 19. Plaintiffs provide no explanation for this lack of disclosure and, tellingly, still fail to provide any basis for their property damages claims – including any evidence showing whether their property was in fact damaged by the Defendant's acts.

Accordingly, the Court **GRANTS** Defendant's motion and excludes any testimony regarding the valuation of Plaintiffs' alleged property damages.

### 8. Defendant's Motion *in Limine* #10 to Exclude Evidence Regarding Subsequent Condition and/or Repairs to the Carrington Roof

Defendant seeks to preclude Plaintiffs from introducing any evidence regarding Defendant's replacement of the roof of the Carrington in 2015. Dkt. # 44 at p. 20. Defendant argues that this evidence is irrelevant and unfairly prejudicial. *Id.* at pp. 21-

ORDER – 16

22. Plaintiffs argue that Defendant spoliated evidence and that Defendant should not be allowed to argue that there is no evidence the roof of Building I leaked in 2012. Dkt. # 49 at pp. 12-13.

Defendant rightfully argues that this evidence is irrelevant. Whether or not the building was water damaged in 2015 is irrelevant to the issue of whether mold was present in the Plaintiffs' apartment in 2012 – particularly given that the Parties have stipulated that the Plaintiffs informed Defendant's representative of the presence of visible mold in the apartment in their [Proposed] Pretrial Order. *See* Dkt. # 48 at pp. 2-3.

Furthermore, Defendant provides some evidence showing that no roof leak occurred in the Plaintiffs' building, including a "roof repair log" showing that no repair was made to building I between October 2008 and August 2014 (*see* Dkt. # 44 (Krashan Decl.) Ex. K) and testimony from Axis Roofing – the company which performed the 2015 repairs – that it did not know how long the plywood under the roof underlayment of building I was damp (*See* Dkt. # 44 (Krashan Decl.) Ex. J [Casey Groves Depo. Tr.] 40:7-12).

In any event, even assuming, *arguendo*, that the evidence was relevant, any relevance it may have is clearly outweighed by the danger of unfair prejudice. Whether or not the roof of building I leaked in 2015 (or, for that matter, in 2012) is collateral to the central issues in this case and is likely to confuse the jury by inviting speculation as to the cause of any mold in the Plaintiffs' apartment and requiring a determination of whether there were any water leaks in 2015 (not least 2012).

For this reason, the Court **GRANTS** Defendant's motion. However, this ruling is without prejudice to Plaintiffs' use of this evidence for impeachment purposes.

### 9.     Defendant's Motion *in Limine* #11 to Exclude Evidence Regarding Mold in Other Apartments

Defendant also seeks to preclude Plaintiffs from introducing "service requests that mention moisture, mildew, mold, or a leak" for other apartments in the Carrington on the

ORDER – 17

grounds that these are irrelevant, unduly prejudicial, and are hearsay. *See* Dkt. # 44 at p. 22. Plaintiffs respond that these are relevant because they implicate a water-damaged building and are not hearsay as they qualify for the business records exception to the rule against hearsay. *See* Dkt. # 49 at pp. 13-14.

Evidence that other tenants experienced reported similar mold conditions is relevant to establishing the existence of mold within Plaintiffs' apartment at the time they allege they suffered their injuries.

Nevertheless, as Defendant points out, evidence of other accidents or prior acts may normally be excluded if used to show that a party acted in accordance with that character. *See* Fed. R. Evid. 404(b); *see also Stewart v. State*, 597 P.2d 101, 112 (Wash. 1979). Plaintiffs plainly appear to introduce this evidence to establish that their apartment was similarly affected by mold and moisture. That is not permissible.

Accordingly, the Court **GRANTS** Defendant's motion. However, this ruling is without prejudice to Plaintiffs' use of this evidence for purposes other than to show that Defendant acted similarly in their case, such as for impeachment.

### 10. Defendant's Motion *in Limine* #13 to Exclude Statements that Plaintiffs Did Not Seek Medical Treatment Because They Could Not Afford Treatment

Defendant summarily contends that Plaintiffs should not be permitted to testify that they were unable to seek adequate medical care because of financial reasons as this evidence is irrelevant and prejudicial. Dkt. # 44 at p. 25. Plaintiffs summarily contend that this evidence is relevant. Dkt. # 49 at pp. 14-15.

Without further explanation, the Court **DENIES** Defendant's motion without prejudice to raising it at trial. It is unclear why, precisely, Defendants seek to exclude such evidence. In any event, this testimony may be relevant to showing the extent of Plaintiffs' current injuries.

ORDER – 18

### 11. Defendant's Motion *in Limine* #16 to Exclude Questioning or Argument Designed to Elicit a Punitive Response

Finally, Defendant seeks to exclude any arguments or questioning designed to "elicit a punitive response." Dkt. # 44 at p. 26. It is not entirely clear what Defendant means, particularly as Plaintiffs do not seek punitive damages. *See* Dkt. # 1 (Compl.) ¶¶ 5.1-6.5.

"[M]otions in limine should rarely seek to exclude broad categories of evidence." *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, CV 08-8525 PSG (PJWx), 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010) (citing *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)); *Moniz v. City of Delano*, Case No. 1:13-cv-00093-JLT, 2015 WL 128124, at *1 (E.D. Cal. Jan. 8, 2015). Instead, for motions in limine to be useful to the Court, they "must identify the evidence at issue and state with specificity why such evidence is inadmissible." *Id.* (citing *United States v. Cline*, 188 F. Supp. 2d 1287, 1292 (D. Kan. 2002)).

Defendant does not do so. As such, the Court **DENIES** Defendant's motion without prejudice to raising specific objections at trial.

## IV. CONCLUSION

For the reasons stated above, the Court rules on the Parties' motions *in limine* as follows:

- Plaintiffs' motions *in limine* are **DENIED**.
- Defendant's motion *in limine* #1 is **GRANTED in part and DENIED in part.** Plaintiffs' expert Dr. Scott McMahon may not testify as to opinions he reached prior to treating Plaintiffs. Dr. McMahon may testify *only* as to opinions he actually developed while treating Plaintiffs. The Court **defers ruling** as to whether Dr. McMahon may offer testimony as to his treatment of the child Plaintiff.
- Defendant's motions *in limine* #2, 3 are **DENIED**. Drs. Buscher and Johnson may offer opinions on causation that they developed while treating Plaintiffs.

ORDER – 19

Defendant may renew its objection to as Drs. Buscher and Johnson's testimony regarding the reasonableness of the Plaintiffs' medical treatment and costs by other providers is **DENIED** without prejudice to raising those issues at trial.

- Defendant's motion *in limine* #4 to exclude testimony from Dr. Mary Anne Block is **GRANTED** so long as Plaintiffs do not show that Dr. Block will be available to attend and testify at trial.

- Defendant's motion *in limine* #5 is **DENIED** to the extent that Plaintiffs' treating physician experts formed opinions regarding the necessity of Plaintiffs' future medical care in the course of treatment. Defendant's motion is **GRANTED** to the extent that Plaintiffs intend to introduce evidence regarding their likely future medical costs through their treating physician experts.

- Defendant's motion *in limine* #6 is **GRANTED**. Plaintiffs may not offer evidence regarding a RealTime mycotoxin urine panel.

- Defendant's motions *in limine* #7, 8, 13, and 16 are **DENIED** without prejudice to raising specific objections at trial.

- Defendant's motion *in limine* #9 is **GRANTED**. Plaintiffs may not offer any testimony regarding the valuation of Plaintiffs' alleged property damages.

- Defendant's motion *in limine* #10 is **GRANTED**. Plaintiffs may not offer evidence regarding Defendant's repair of the Carrington's roof in 2015.

- Defendants' motion *in limine* #11 is **GRANTED**. Plaintiffs may not evidence regarding the presence of mold in other apartments in the Carrington.

- Defendant's motion *in limine* #12 is **GRANTED**. Plaintiffs may not offer any testimony or evidence regarding MoldScore and Plaintiffs' Proposed Exhibit 25 shall be redacted to exclude any reference to MoldScore.

- Defendant's motion *in limine* #14 is **GRANTED**. Plaintiffs may not offer any evidence of settlement discussions or of Defendant's liability insurance.

ORDER – 20

- Defendant's motion *in limine* #15 is **GRANTED**.  Plaintiffs may not offer any evidence regarding the financial status or size of Defendant.

- Defendant's motion *in limine* #17 is **GRANTED**.  Plaintiffs may not offer any argument that jurors should put themselves in Plaintiffs' position.

- Defendant's motion *in limine* #18 is **GRANTED**.  Plaintiffs may not make any reference at trial to the expense of litigation.

- Defendant's motion *in limine* #19 is **GRANTED**.  The Parties are to give the other party a minimum 24-hour notice of which witnesses will actually testify on each day of trial.

- Defendant's motion *in limine* #20 is **GRANTED**.  Non-party lay witnesses are excluded from the courtroom during trial when they are not testifying.

DATED this 13th day of August, 2015.


The Honorable Richard A. Jones
United States District Judge

ORDER – 21